PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLARD C. LIGGETT, *etc.*, *et al.*, | ) | |
| | ) | CASE NO.  5:12CV2389 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| CHESAPEAKE EXPLORATION, | ) | |
| L.L.C., *et al.*, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | [Resolving ECF Nos. 51 and 57] |

Pending is Plaintiffs' Motion for Partial Summary Judgment (ECF No. 51).  Plaintiffs move the Court for summary judgment in their favor on the First Claim of the Amended Complaint (ECF No. 11) for ejectment.

Also pending is Defendants' Motion for Summary Judgment (ECF No. 57).  Defendants Chesapeake Exploration, L.L.C. and CHK Utica, L.L.C. move the Court for summary judgment in their favor on Count Four of their Counterclaims and Third-Party Complaint (ECF No. 7) for a declaratory judgment that the oil and gas lease at issue here is valid and enforceable.  Defendants also move the Court for summary judgment in their favor on the Amended Complaint (ECF No. 11).

The Court has been advised, having reviewed the record, the parties' briefs and the applicable law.  For the reasons provided below, Plaintiffs' motion is denied and Defendants' motion is granted.

(5:12CV2389)

## I.  Background

As a preliminary matter, the Court notes that the Case Management Plan (ECF No. 29)

provides in pertinent part:

> 14.  Before Defendants may file a dispositive motion, they must submit a written request to be dismissed to Plaintiffs.  Plaintiffs shall either agree to the request for dismissal or shall give explicit reasons in writing for refusing to do so.  Upon such refusal, Defendants shall reassess their position and may file a dispositive motion if they believe they are still entitled to dismissal or summary judgment.  The dispositive motion must be accompanied by a statement certifying that this exchange has occurred.

*Id.* at PageID #: 175.  According to Defendants, they "did so on two occasions, and Plaintiffs

twice refused without even responding."  ECF No. 67 at PageID #: 701.  *See also* ECF Nos. 36,

62, and 63.[1]

For estate planning purposes, in October 2005, Willard C. Liggett and Ruth A. Liggett put

their interests in the real property located at 3290 Pleasant Valley Rd SE, Dennison, Ohio (the

"Property") into fully-revocable trusts in each of their own names (ECF Nos. 71-1, 71-2, and 71-

3), but the Property all the while belonged to Mr. and Mrs. Liggett.  Each of the Trust

Agreements (ECF Nos. 71-1 and 71-2) provides in pertinent part:

> 11.  **TRUSTEE'S POWERS.**  The Trustee of each Trust established under this Agreement . . . shall have the following rights, powers, duties, and immunities to be exercised without court order or other authority upon such terms and conditions and at such times as the Trustee determines in its absolute discretion:
>
> *   *   *
>
> b.  <u>Sales</u>.  To sell or exchange at public or private sale, lease, pledge, mortgage, donate, abandon or otherwise dispose of, deal with, or

---

[1] ECF Nos. 62 and 63 were filed in response to an Order (ECF No. 60).

(5:12CV2389)

> encumber (for any period of time, whether or not ending during the term of the Trust), any real or personal property comprising part of the trust estate.
> \* \* \*
>
> e.    Nominee.  To register and hold trust property in the name of the Trustee, in bearer form, or in the name of a nominee of the Trustee, but the Trustee shall be liable for any wrongful act of any such nominee.

ECF No. 71-1 at PageID #: 725; ECF No. 71-2 at PageID #: 738.

On August 2, 2008, Mr. and Mrs. Liggett personally signed an Oil & Gas Lease (ECF No. 71-4) in which they contractually promised that they (1) had title to the property; (2) would defend that title; and (3) would take any reasonable actions necessary to cure any title defects. Mr. and Mrs. Liggett did not disclose that they held the Property as trustees, despite warranting title otherwise.  Specifically, the Lease (ECF No. 71-4) provides at ¶ 16 that

> [a]ll covenants and conditions between the parties hereto shall extend to their heirs, personal representatives, successors and assigns, and the Lessor hereby warrants and agrees to defend the title to the lands herein described.

ECF No. 71-4 at PageID #: 757.  The Lease (ECF No. 71-4) also provides at ¶ 17 that

> Lessor further agrees to sign such additional documents as may be reasonably requested by Lessee to perfect Lessee's title to the oil and gas leased herein and such other documents related to the sale of production of hydrocarbons as may be required by Lessee or others.

ECF No. 71-4 at PageID #: 757.

Mr. and Mrs. Liggett agreed to lease their mineral interests in the Property, including oil and gas interests, to non-party Patriot Energy Partners LLC for oil and gas exploration purposes. Mr. Liggett testified:

> Q.    . . . My question is, did you agree to do that, Mr. Liggett?
> A.    I signed it, evidently I did.
> \* \* \*

3

(5:12CV2389)

> Q.   Did you tell anyone from Patriot that you didn't agree with anything that you signed that day?
> A.   No, not particularly.  Have to say no.

Deposition of Willard Liggett (ECF No. 52-1) at PageID #: 380.

> Q.   Let me just ask this, Mr. Liggett, in -- in your business dealings, when you sign a document, is it your practice to have agreed to the terms that you signed?
> A.   Yes, sir.
> Q.   Do you recall telling anybody at Patriot Energy that you did not agree with anything in the documents that you signed?
> A.   No, I -- no, I thought I did.  I thought I did.

ECF No. 52-1 at PageID #: 382.  Defendants are the successors in interest to Patriot Energy

Partners LLC under the Lease (ECF No. 71-4) and its Ratification & Amendment (ECF No. 71-

5).  *See* Stipulation of Undisputed Facts (ECF No. 71) at ¶ 6.

After they executed the Lease (ECF No. 71-4), and believing that it was valid and

enforceable, Mr. and Mrs. Liggett received and accepted payments made by Patriot Energy

Partners LLC and Defendants pursuant to it.  Mr. Liggett testified as follows:

> Q.   Now, when Patriot Energy had the oil and gas lease, they made some payments to the two of you, didn't they?
> A.   Yes.
> Q.   And those payments were to the two of you individually, Willard Liggett and Ruth Liggett, correct?
> A.   Yes.
> Q.   And you deposited those checks into your bank account, correct?
> A.   Except the last one.
> Q.   Okay.  We'll talk about that in a minute.  Except for the last one, you deposited those into a bank account, correct?
> A.   Yeah.
> Q.   Cashed the checks?
> A.   Yes.
> Q.   And the bank account that you deposited those checks into, were they a joint account between the two of you?
> A.   Yes.

4

(5:12CV2389)

> Q.      Was that joint account set up as part of the trust or was that just a joint account that the two of you had?
> A.      Just the two of us.

ECF No. 52-1 at PageID #: 385-86.  Marilyn Sue Ott, the daughter of Mr. and Mrs. Liggett and

their "power of attorney,"[2] similarly testified:

> Q.      When Chesapeake sent payments to your parents under the lease, did you deposit those in the bank for them?
> A.      Yes.
> Q.      Did you endorse their names?
> A.      No, they did.
> Q.      They did?
> A.      Yes.
> Q.      And do you recall whether those checks were made payable to your parents as trustees?
> A.      They were made payable to Willard and Ruth Liggett.
> Q.      Not as trustees?
> A.      Not as trustees.
> Q.      And they endorsed those checks, correct?
> A.      Correct.
> Q.      And they -- you deposited them in the bank?
> A.      Correct.

ECF No. 54-1 at PageID #: 528-29.

At some point, Ms. Ott questioned why her parents had executed the Lease (ECF No. 71-

4) in their individual/personal capacities, given that they had previously transferred the Property

to the Trusts.  She testified:

> Q.      Anything else that you discussed being wrong?
> A.      Why did mom and dad sign that way?  We talked about that.
> Q.      And what do you mean by, "why did mom and dad sign that way"?
> A.      Why did they sign Willard and Ruth Liggett?  Willard, Ruth Liggett instead of the trust of.
> Q.      Did you ever ask your parents why?

---

[2]  Deposition of Marilyn Ott (ECF No. 54-1) at PageID #: 506.

(5:12CV2389)

      A.      Yes.

      Q.      What did they say?

      A.      They said that they believed that they had -- they owned the land, they believed that -- that the trust did not go into effect until later.

ECF No. 54-1 at PageID #: 500.  She also testified:

      Q.      Could you describe for the record what [ECF No. 71-6] is.

      A.      This is a document that told names, addresses of what to do, where to go, to change the ownership -- change of ownership.

      Q.      And what were you trying to do in regard to change of ownership?

      A.      I was trying to put it in the trust.

      Q.      Did you, in fact, fill out documents to put it in the trust's name?

      A.      I sent a letter to Chesapeake stating that this is what's going on.  I had called them, talked to them -- someone -- talked to them, they said -- they sent me here, I filled this out, sent them the information, a copy of the power of attorney, a copy of the trust agreement.  I sent them both of those.

      Q.      And what was your intention when you sent them those documents?

                MR. ROSSI:  Objection; irrelevant.

      A.      Put it in the trust.

      Q.      Pardon me?

      A.      To put the agreement into the trust.

      Q.      When you sent those papers to Chesapeake, did you also ask for more money?

      A.      No.

ECF No. 54-1 at PageID #: 526-27.

      Q.      You said you talked to people at Chesapeake?

      A.      I called Chesapeake.  I called the 800 number, wherever I could get.  I called 1-877-245-1427.

      Q.      And you never spoke with anyone?

      A.      I spoke with someone.  They sent me this (indicating).  They gave me this, which is how to -- change of ownership.  I sent that in.  I sent in what they wanted, I got nothing in return.  Absolutely nothing.

ECF No. 54-1 at PageID #: 521-22.

On August 22, 2012, Plaintiffs Willard C. Liggett and Ruth A. Liggett, Co-Trustees

Under 10/10/05 Liggett Trusts filed a one-count Complaint (ECF No. 1-1 at PageID #: 10-29) in

6

(5:12CV2389)

the Tuscarawas County, Ohio Court of Common Pleas, being Case No. 2012 CV 08 0760.

Defendant removed the case to this Court on September 24, 2012, on the basis of diversity

jurisdiction.  *See* Defendant's Notice of Removal (ECF No. 1).

On October 5, 2013, Plaintiffs filed an Amended Complaint (ECF No. 11).  The First

Claim is for Ejectment.  The Second Claim is for Frivolous Conduct - R.C. § 2323.51 and Fed.

R. Civ. P. 11.  Plaintiffs allege that the Lease (ECF No. 71-4) is invalid because Mr. and Mrs.

Liggett signed it in their individual/personal capacities rather than as trustees on behalf of the

Trusts.

Defendants filed an Answer, Counterclaims, and Third-Party Complaint (ECF No. 7) and

an Answer to First Amended Complaint and Incorporating Prior Counterclaims (ECF No. 32).

The Counterclaims are against Plaintiffs Willard C. Liggett and Ruth A. Liggett, Co-Trustees

Under 10/10/05 Liggett Trusts.  The Third-Party Complaint is against Willard C. Liggett and

Ruth A. Liggett personally.  The Counterclaims and Third-Party Complaint (ECF No. 7) sets

forth eight Counts:  Count One - Breach of Contract; Count Two - Breach of Warranty of Title;

Count Three - Unjust Enrichment; Count Four - Declaratory Judgment; Count Five -

Constructive Trust; Count Six - Reformation; Count Seven - Quiet Title; and Count Eight -

Frivolous Conduct - R.C. § 2323.51.

## II.  Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and

disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a);

7

(5:12CV2389)

*see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).  The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial."  *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute.  An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury."  *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).  The non-moving party must, to defeat the motion, "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant."  *Guarino*, 980 F.2d at 403.  In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact.  *Id.* at 248.  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  In determining whether a factual issue is "genuine," the court must

8

(5:12CV2389)

decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict.  *Id.*  Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact.  *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).  The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment.  *Id.*

### III.  Analysis

### A.  First Claim of the Amended Complaint (ECF No. 11) for Ejectment

To establish their claim for ejectment, Plaintiffs must prove that they have "legal title and [are] entitled to the possession of the real property but [are] unlawfully kept out of the possession by the defendant[s]."  *Liberty Self-Stor, Ltd. v. Porter*, Nos. 21699, 21728, 2007 WL 949489, at *3 (Ohio App. 2nd Dist. March 30, 2007) (citing *Turnbull v. City of Xenia*, 80 Ohio App. 389, 392 (1946).  *See also* Ohio Rev. Code § 5303.03.  Moreover, the Court can order ejectment only if Plaintiffs prove that Defendants are "wrongfully in possession of [the] real property [at issue]."  *Liberty Self-Stor, Ltd.*, 2007 WL 949489, at *3 (citing *Turnbull*, 80 Ohio App. at 392.  Plaintiffs have not established that Defendants are "in possession of" their property and that Defendants are unlawfully keeping Plaintiffs out of it.  Plaintiffs have unequivocally admitted that fact.

Mr. Liggett testified as follows:

9

(5:12CV2389)

> Q.     Can you tell me what actions Chesapeake has taken on the premises that is
>        entered into and withheld possession from you?  Can you – can you
>        answer that question, Mr. Liggett?
>                                            *    *    *
> A.     No.  I'm not --
>                                        *    *    *
> Q.     Chesapeake isn't on the premises drilling right now, is it?
> A.     I don't think.
> Q.     All right.  Chesapeake isn't conducting any exploratory activities on your
>        property as we sit here today, is it?
> A.     No.
> Q.     Chesapeake hasn't built any roads or installed oil and gas producing
>        equipment on your property, has it?
> A.     No.

ECF No. 52-1 at PageID #: 372-74.

Mrs. Liggett has also testified that Defendants are not possessing the property or keeping

her and Mr. Liggett out of it:

> Q.     Well, let me ask you this question, Mrs. Liggett, are you aware of any
>        activities that Chesapeake is conducting on the premises?
> A.     No.
> Q.     Have -- are you aware of anything Chesapeake has done to withhold
>        possession of the premises from you?
> A.     Not unless it's legal and I don't know it.
> Q.     . . . You're unaware of any drilling activity Chesapeake's conducted?
> A.     They haven't.
> Q.     You're not aware of any roads or equipment that Chesapeake's put on your
>        property?
> A.     Nope.
> Q.     No one from Chesapeake has come out here [to the Property] and told you
>        you couldn't come on your own property, have they?
> A.     (Indicates negatively.)
> Q.     No?
> A.     No.

Deposition of Ruth Liggett (ECF No. 53-1) at PageID #: 445-46.

Finally, Ms. Ott confirmed her parents admissions regarding the claim for ejectment:

10

(5:12CV2389)

> Q.    My question is, what do you believe that Chesapeake has done to, quote, unlawfully enter into and have withheld possession of the premises from the Plaintiffs?  What has Chesapeake done?
>
> *   *   *
>
> THE WITNESS:        I don't know what it means.
>
> BY MR. SCHEAF:
>
> Q.    Let me ask this question:  Apart from this, what has Chesapeake ever done on your parents' property?
>
> A.    Nothing.
>
> Q.    Has anyone from Chesapeake ever come out and kept your parents off the property?
>
> A.    No.
>
> Q.    Tried to kick you off the property?
>
> A.    No.

ECF No. 54-1 at PageID #: 508-509.

Plaintiffs have not established that Defendants are conducting activity on the Property and that Defendants are unlawfully keeping Plaintiffs out of it.  Therefore, Defendants are entitled to summary judgment on Plaintiffs' claim against them for ejectment as a matter of law.

**B.  Second Claim of the Amended Complaint (ECF No. 11) for Frivolous Conduct - R.C. § 2323.51 and Fed. R. Civ. P. 11**

Plaintiffs allege in their Second Claim that the Counterclaims and Third-Party Complaint (ECF No. 7) are "frivolous" and "serve[ ] merely to harass, bully or maliciously injure the Plaintiffs, or [have] been filed and served for other improper purpose" because they are based upon "factual contentions that have no evidentiary support."  ECF No. 11 at ¶¶ 10, 12, and 13. The record belies these assertions.  As detailed below, the Lease (ECF No. 71-4) is valid and enforceable.  Therefore, Plaintiffs' claim of "frivolous" conduct founded on the suggestion that the Lease (ECF No. 71-4) is invalid because of the way Plaintiffs signed it is without merit.

**C.  Count Four of the Counterclaims and Third-Party Complaint (ECF No. 7) for Declaratory Judgment**

11

(5:12CV2389)

Defendants are entitled to a declaratory judgment that the oil and gas lease at issue here is valid and enforceable for two reasons.  First, it is undisputed that when Mr. and Mrs. Liggett leased the Property in 2008 for oil and gas exploration purposes, they (1) believed they had the right, power, and ability to do so, (2) intended to do so, and (3) believed that they had.  Mr. Liggett testified as follows:

> Q.    -- when you signed this oil and gas lease, was it your intention at that time to lease oil and gas mineral interests to Patriot Energy?
> A.    Yes.
> Q.    Did you tell Patriot Energy or anyone with them that you did not own the mineral interests?
> A.    No.
> Q.    Did you think when you signed this that you did own the mineral interests?
> A.    I told them I owned it.
> Q.    That's what you told Patriot?
> A.    Told Patriot.
> Q.    And did you believe at the time that you did own those mineral interests?
> A.    Yes.
> Q.    And you agreed to be bound by the terms and conditions of this lease, did you not?
> A.    Yeah.

ECF No. 52-1 at PageID #: 378.  Mrs. Liggett similarly testified:

> Q.    When you signed the oil and gas lease, did you think you owned the mineral interests that you were leasing?
> A.    Uh-huh.
> Q.    Yes?
> A.    Yes.

ECF No. 53-1 at PageID #: 449.

> Q.    And like your husband, is it your practice to be bound by documents that you sign?
> A.    Yes.
> Q.    Yes?
> A.    Yes.

(5:12CV2389)

ECF No. 53-1 at PageID #: 448.

"Where a contract is made in furtherance of the interests of an undisclosed principal, both the principal and the agent are liable for breach of its underlying obligations." *Illinois Controls, Inc. v. Langham*, 70 Ohio St.3d 512, 524 (1994). When Mr. and Mrs. Liggett executed the Lease (ECF No. 71-4), the Property and the accompanying mineral interests were held by the Trusts. As such, when they executed the Lease (ECF No. 71-4), Mr. and Mrs. Liggett were necessarily acting as agents for the Trusts; indeed, as detailed above, the Trusts specifically gave Mr. and Mrs. Liggett the authority and power to hold and dispose of the Property. *See* ECF No. 71-1 at PageID #: 725; ECF No. 71-2 at PageID #: 738. In relation to the Lease (ECF No. 71-4), however, the Liggetts' principal (the Trusts) was undisclosed. Mr. and Mrs. Liggett never disclosed that they did not own the Property or that they were signing the Lease (ECF No. 71-4) on the Trusts' behalf. As such, the Liggetts were serving as agents for an undisclosed principal.

The Liggetts' execution of the Lease (ECF No. 71-4) as agents for the Trusts renders both the undisclosed principal (the Trusts) and the agents (Mr. and Mrs. Liggett) jointly and severally liable as parties to the Lease, and bound to its terms. *Illinois Controls, Inc.*, 70 Ohio St.3d at 524; *Wahab Janitorial Services v. P.M. Group Mgt.*, 161 Ohio App.3d 632, 524-25 (2005).

Mr. and Mrs. Liggett contend that they harbored the mistaken belief that they remained owners of the Property until their death. ECF No. 59 at PageID #: 608. Moreover, Patriot Energy Partners LLC signed the Lease (ECF No. 71-4) without benefit of title examination. ECF No. 59 at PageID #: 609. Plaintiffs and Third-Party Defendants argue that there was a mutual mistake. ECF No. 59 at PageID #: 609, 611; ECF No. 64 at PageID #: 663. The Court finds that

13

(5:12CV2389)

Plaintiffs and Third-Party Defendants had superior knowledge, and Patriot Energy Partners LLC simply relied on the Liggetts' contractual representations as to their supposed ownership—representations that the Liggetts warranted and promised to cure. *See e.g.*, *Hawley v. Ritley*, No. 42273, 1981 WL 4519, at *4 (Ohio App. 8th Dist. Sept. 3, 1981) ("Reliance upon facts known to be incomplete by the party representing them to be whole does not convert the legal stance from misrepresentation to mutual mistake of fact or unilateral mistake of a variety warranting rescission.").

Second, the Court enforces the Lease (ECF No. 71-4) because the Liggetts warranted title and entered a covenant to defend it. Pursuant to the Lease generally and paragraphs 16 and 17 specifically, (ECF No. 71-4), Mr. and Mrs. Liggett made a covenant to take any steps necessary to defend the title they warranted, including executing documents to bind the Trusts to the Lease. ECF No. 71-4 at PageID #: 757. *See e.g.*, *Fassnacht v. Bessinger*, 35 Ohio App. 509 (1930); *Wetzell v. Richcreek*, 53 Ohio St. 62, at syllabus para. 1 (1895); *Templeton v. Sheets*, No. 00CA33, 2001 WL 1287142, at *3 (Ohio App. 4th Dist. Sept. 21, 2001); *Morgan v. Reese*, 99 Ohio App. 473, 479 (1954).

Therefore, Defendants are entitled to summary judgment on Count Four of the Counterclaims and Third-Party Complaint (ECF No. 7) for Declaratory Judgment that the Lease (ECF No. 71-4) is valid and enforceable, just as Mr. and Mrs. Liggett believed when and after they signed it until they filed this action.

14

(5:12CV2389)

### IV. Conclusion

Viewing Plaintiffs' probative evidence and all reasonable inferences drawn therefrom in the light most favorable to Plaintiffs, the Court concludes that there is no genuine issue of material fact and Defendants are entitled to a judgment as a matter of law on the Amended Complaint (ECF No. 11) and Count Four of their Counterclaims and Third-Party Complaint (ECF No. 7) for a declaratory judgment that the oil and gas lease at issue here is valid and enforceable.

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment (ECF No. 51) is denied. Defendants' Motion for Summary Judgment (ECF No. 57) is granted. Counts One, Two, Three, Five, Six, Seven, and Eight of the Counterclaims and Third-Party Complaint (ECF No. 7) remain pending for trial.


      IT IS SO ORDERED.


  October 11, 2013                   */s/ Benita Y. Pearson*
Date                                Benita Y. Pearson
                                    United States District Judge